# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JARRED BURTON KNIGHT,<br>      Petitioner, | |
| vs. | Civil Action No. 14-1058<br>Chief Magistrate Judge Maureen P. Kelly |
| VINCENT F. MOONEY *Warden SCI Coal Township*; THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,<br>      Respondents. | |

## **OPINION**

Jarred Burton Knight ("Petitioner") was convicted of, inter alia, third degree murder in the death of his then girlfriend's 14 month old child by, apparently, slamming the child's head against a wall with such force as to result in a dent to both the wall and the underlying stud. As a result, Petitioner was sentenced to 20 to 40 years incarceration.

Petitioner, proceeding by privately retained counsel, raises four Grounds for Relief in the instant Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"). ECF No. 1. Because none of the Grounds merits the grant of federal habeas relief, the Petition will be denied. Because jurists of reason would not find denial of the Petition debatable, a Certificate of Appealability will also be denied.

## I. FACTUAL HISTORY

The Pennsylvania Superior Court summarized the factual background of this case as follows in its Opinion dated May 25, 2010:

> On the morning of June 23, 2007, at 8:00 a.m., Jessica Davis, mother of the decedent, went to work and left her child in the sole care of Appellant, her boyfriend. That afternoon, Appellant ran to a neighbor's home seeking emergency medical help for the unresponsive child whom Appellant alleged had accidentally hit his head. The child was life-flighted to a hospital but later died as a result of blunt force trauma to his head.

> Following a police investigation, Appellant was arrested and charged. The Commonwealth's case centered on an indentation in the drywall of the home's bathroom and the allegation that the child's fatal head injuries were caused when Appellant threw the child into that wall. A jury convicted Appellant of the child's murder, judgment of sentence was imposed on June 17, 2009. . . .

Pa. Superior Court slip op., ECF No. 1-2 at 1 – 2.

## II. PROCEDURAL HISTORY

### A. State Court

After Petitioner was convicted, he filed a direct appeal to the Pennsylvania Superior Court, which affirmed the conviction. ECF No. 1-2 at 1 – 13. Petitioner filed a Petition for Allowance of Appeal, which the Pennsylvania Supreme Court denied on September 10, 2010. ECF No. 9 at 2. Petitioner then filed a petition under the Post Conviction Relief Act ("PCRA"), which the Court of Common Pleas of Butler County denied. ECF No. 1-4 at 1 – 15. Petitioner appealed to the Superior Court, which affirmed. ECF No. 1-5 at 1 – 15. Thereafter, Petitioner filed a Petition for Allowance of Appeal, which the Pennsylvania Supreme Court denied on June 24, 2014. ECF No. 9 at 2.

### B. Federal Court

Petitioner filed the instant counseled Petition in this Court, raising the following four Grounds for Relief:

> GROUND ONE: The Petitioner was denied his federal constitutional right to a fair and impartial jury when it was discovered after the trial that a juror, Amy McMillan, should have been excluded because of a prior relationship with the Petitioner's uncle that created a bias in that juror and prejudiced the Petitioner.

ECF No. 1 at 5.

> GROUND TWO: The Petitioner was denied his federal constitutional right to a fair and impartial jury when that same juror had lied during voir dire and should have been excluded from the jury.

Id. at 7.

> GROUND THREE: The PCRA Court violated the Petitioner's 14th Amendment right to due process and (5th A) [sic] right to compulsory process by refusing counsel's motion to subpoena juror Amy McMillan to testify about relationship to Petitioner's uncle, her untruthful answers on jury questionnaire, and her visit to the Petitioner's uncle after the trial.

Id. at 8.

> GROUND FOUR: PCRA counsel was ineffective for failing to subpoena juror Amy McMillan for PCRA hearing and deprived Petitioner of effective assistance of counsel and due process under the 14th Amendment to U.S. Constitution. Hence, Petitioner was denied compulsory process (5th Amendment) to prove juror's lies and bias against him.

Id. at 10.

Respondents, through the District Attorney of Butler County, filed an Answer denying that Petitioner was entitled to any relief. ECF No. 9. Petitioner then filed a Traverse, ECF No. 22, and a Brief in Support of the Petition. ECF No. 23. All parties have consented to have the United States Magistrate Judge exercise plenary jurisdiction. ECF Nos. 10 and 11.

## III. AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In <u>Williams</u>, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." <u>Id</u>. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Secondly, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**IV. DISCUSSION**

**A. Grounds One and Two - Alleged Juror Misconduct by Amy McMillin.**

We address Grounds One and Two together because they both relate to Amy McMillin,[1] a juror at Petitioner's trial. In Ground One, Petitioner claims that the juror Amy McMillin engaged

---

[1] Petitioner spells the juror's name as "McMillan" however, the state courts mostly spelled her name as "McMillin." We will likewise spell her name as McMillin where we are not quoting from Petitioner's filings.

4

in misconduct and consequently, was seated as a juror when she should not have been, and thereby denying Petitioner a fair trial. Specifically, Petitioner asserts that

> A trial juror, Amy McMillan, had been charged, prior to Petitioner's trial, with harassment by Petitioner's uncle, Caption [sic] Roger Knight, who is a police officer. During voir dire and through out [sic] the trial the juror gave no indication of this relationship. After trial, the juror visited Petitioner's uncle. Consequently, the evidence supporting the claim was after-discovered and the issues were brought to light in the PCRA process. PCRA counsel failed to subpoena the juror, Amy McMillan, for the PCRA hearing. After the PCRA hearing, the PCRA court refused to grant the Petitioner's request to have the juror subpoenaed as a witness for a hearing.

ECF No. 1 at 5.

In Ground Two, Petitioner asserts as a factual basis that Amy McMillin "lied during voir dire when she failed to disclose during voir dire that she knew Captain Roger Knight, Petitioner's uncle; similarly, she lied when she indicated on her questionnaire that she did not have a criminal record. In fact, the juror had been convicted of harassment and the police officer on the case was Petitioner's uncle." Id. at 7.

The Pennsylvania Superior Court addressed these two issues on the merits as follows:

> Knight asserts that he was denied his constitutional right to a fair trial because juror Amy McMillin should have been excluded due to her relationship with his uncle, Roger Knight, a captain of the Slippery Rock University Police Department.
>
> Knight correctly states the following standard for excluding a juror:
>
>> A prospective juror should be excused for cause . . . where, irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the prospective juror has such a close relationship, be it familial, financial, or situational, with any of the parties, counsel, victims or witnesses.
>
> ***Commonwealth v. Johnson***, 445 A.2d 509, 511 (Pa.Super. 1982).

At the PCRA hearing, Roger Knight testified that he knew McMillin, who used to clean buildings at Slippery Rock. In 2005, he interrogated her regarding an incident, which eventually led to her conviction for the summary offense of harassment. In June 2009, after Knight's trial, McMillin went to Captain Knight's office at Slippery Rock, told him that she was a juror on Knight's case.

Captain Knight did not testify at his nephew's trial. However, Knight states:

> Captain Knight was listed as a potential witness on the defense's witness list. Number nine on the Witness List for Jarred Knight lists Roger D. Davis. Unfortunately, a clerical error lists Captain Knight's last name as Davis rather than Knight, but the address listed is Captain Knight's address.

Appellant's Brief, at 29.

Despite the fact that the witness list did not include Roger Knight's name, Knight asserts that McMillin failed to truthfully answer Question 27(C) on the jury questionnaire ("Do you know any of the following persons (C) Defendant's witness list?"). Knight fails to articulate any rational explanation why McMillin should have indicated that she knew a person whose name was not on the witness list.

Knight further asserts that by going to see Captain Knight after the trial, McMillan [sic] demonstrated that she could not have been a fair and impartial juror.

At the PCRA hearing, the following exchange took place between counsel for Knight and Captain Knight:

> Q: Were there other times that you had contact with [McMillin]?
>
> A: Yes. She would stop into the university and ask for me specifically. And in 2009, I had a call from our dispatch saying that I had a visitor. And when I went out, it was Amy McMillin. So I brought her back to my office. She wanted to speak with me. And when she came in, she sat down and apologized for Jarred's conviction, which I felt was kind of odd. But I didn't go into conversation with her. But she said she was sorry. And I said, oh, thanks. And she said, I sat on the jury. And I was like, oh, really. And then I changed the subject and asked her what she was there to

6

>talk to me about. So I just completely ignored the conversation about Jarred.

PCRA Hearing, 8/28/12, at 9-10.

>Based on this testimony, Knight argues, "McMillin was in effect boasting of her involvement in this matter. It is a presumptive inference from her conduct that she was gloating, and if she was gloating, it is permissible to infer that she was not impartial." Appellant's Brief, at 30. Captain Knight's testimony regarding McMillin's hearsay statements of sorrow and apology simply does not support, by a preponderance of the evidence, that her presence on the jury denied Knight his constitutional right to a fair trial.

ECF No. 1-5 at 11 – 13.

### 1. Ground One – Alleged juror bias.

Essentially, we find the Superior Court's disposition of Ground One to be that Petitioner had the burden to prove bias and partiality on the part of juror McMillin, and that Petitioner failed to carry that burden through Captain Knight's hearsay testimony of what McMillin supposedly told him rather than through the presentation of testimony from Juror McMillin. See also PCRA Trial Court slip op., ECF No. 1-4 at 12 ("Defendant argues that Ms. McMillin was biased but fails to provide any evidence of bias or prejudice."). We do not find this disposition of Ground One contrary to or an unreasonable application of United States Supreme Court jurisprudence on juror challenges. Indeed, it is axiomatic that a proponent alleging juror bias bears the burden of proving juror bias. See, e.g., United States v. McDonald, 112 F.3d 511 (4th Cir. 1997) ("A party moving for new trial because of juror misconduct bears the burden of demonstrating that a juror failed to answer a material question, and that a truthful response by the juror would have provided a valid basis to challenge for cause.") (citing McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984)); United States v. Estey, 595 F.3d 836, 842 (8th Cir. 2010) ("Where an attack is made upon the integrity of the trial by reason of alleged

7

misconduct on the part of a juror in failing to disclose information pertinent to the issue of prejudice, the defendant's burden of proof must be sustained not as a matter of speculation, but as a demonstrable reality.") (quoting United States v. Whiting, 538 F.2d 220, 223 (8th Cir. 1976)); Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982) ("The Supreme Court [in Smith v. Phillips] rejected the implied bias argument and held that due process requires only that a defendant have the opportunity at a post-trial hearing to prove actual bias.").

Instantly, the state courts properly assigned the burden to Petitioner to prove bias on the part of Amy McMillin. On this record, including the undisputed facts that the name of Roger Knight was not on the witness list (incorrectly listed as "Roger D. Davis") and Roger Knight was never called as a witness at trial, it cannot be said that the state courts unreasonably concluded that Petitioner failed to carry that burden.[2]

## 2. Ground Two – Alleged lying by juror.

Petitioner seemingly suggests that this disposition of Ground Two by the Superior Court is contrary to or an unreasonable application of McDonough Power Equipment v. Greenwood, 464 U.S. 548 (1984). ECF No. 23 at 3 – 4. In McDonough, the losing litigants argued they were entitled to a new trial because a juror had failed to disclose material information in response to a voir dire question. However, as acknowledged by Petitioner, the United States Supreme Court held in that case that in order "to obtain a new trial in such a situation, a party must first

---

[2] We note that Petitioner was given an opportunity to carry that burden by means of an evidentiary hearing in the PCRA proceeding. However, his PCRA counsel failed to subpoena Amy McMillin to appear at the PCRA hearing and/or only belatedly requested the PCRA trial court to subpoena Amy McMillin, a request that the PCRA trial court apparently denied. That PCRA counsel did not take the opportunity to establish bias in state court is not an error on the part of the state courts but, as recognized by present counsel, is an error on the part of Petitioner's PCRA counsel, and hence, Petitioner's claim in Ground Four that PCRA counsel was ineffective for failing to subpoena Amy McMillin.

8

demonstrate that a juror had failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id. at 556.   Petitioner argues that Juror McMillin failed to answer two questions honestly on the voir dire question.  Namely, Petitioner contends that McMillin failed to disclose that 1) she had been convicted of a crime, and 2) that she knew Captain Knight.  ECF No. 23 at 3 – 4.

In Ground Two, Petitioner contends that Amy McMillin lied in her responses to the voir dire questions.  However, the state courts reasonably concluded that Petitioner failed to establish that Amy McMillin lied.  Indeed, Petitioner has failed to carry his burden to show that the state courts' adjudication of this claim that Amy McMillin lied, was contrary to or an unreasonable application of McDonough.  Specifically, Petitioner failed to convince the state courts in the first instance that McMillin "had failed to answer honestly a material question on voir dire" the very threshold showing to properly invoke McDonough.  The state courts expressly found that "it is clear from the record that McMillin did not lie about knowing a person whose name appeared on the witness list.  Further, she did not lie when she indicated that she had not committed a crime." ECF No. 1-5.  These are factual determinations entitled to AEDPA's presumption of correctness, which Petitioner has failed to rebut with clear and convincing evidence.

Petitioner fails to show that McMillin was dishonest about having been convicted of a "crime."  As the PCRA court explained, "a summary harassment conviction would not have prevented Ms. McMillin from serving as a juror (42 Pa.C.S.A. § 4502, Qualifications of jurors)." ECF No. 1-4 at 11.  And as Respondents point out a "crime" does not include a summary offense, such as harassment, which is what McMillin had pleaded guilty to.  ECF No. 9 at 13 -14.  Accordingly, on this record, the state courts' finding of fact that McMillin did not lie or at least

9

that Petitioner failed to establish with evidence that she lied, is presumptively correct and Petitioner has failed to rebut this presumptively true fact with any evidence.

As to the alleged lie that McMillin told by not disclosing that she knew Captain Knight who was listed on Petitioner's potential witness list but under the name of "Roger D. Davis,"[3] the state courts found that again Petitioner failed to establish that McMillin lied. PCRA Court slip op. at 11 ("Neither witness list contains the name Roger Knight."); Superior Court slip op., ECF No. 1-5 at 12 ("Despite the fact that the witness list did not include Roger Knight's name, Knight asserts that McMillin failed to truthfully answer Question 27(C) on the jury questionnaire ('Do you know any of the following persons (C) Defendants' witness list?'). Knight fails to articulate any rational explanation why McMillan [sic] should have indicated that she knew a person whose name was not on the witness list."). Petitioner fails to rebut the factual determination of the Courts either that McMillin did not lie or to rebut the finding that Petitioner failed to establish that she lied. Hence, Petitioner has not shown that this factual determination of the state courts was unreasonable.

In light of the state court's finding that Petitioner failed to carry his burden to show that McMillin lied, we find that Petitioner has not established the state courts' disposition of this claim was contrary to or an unreasonable application of McDonough.

---

[3] As Respondents point out:

> "Petitioner states: Captain Knight was listed as a potential witness on the defense's witness list. Number nine on the Witness List for Jarred Knight lists Roger D. Davis. Unfortunately a clerical error lists Captain Knight's last name as Davis rather than Knight, but the address listed is Captain Knight's address."

ECF No. 9 at 12.

Petitioner explicitly argues that the state courts' disposition of apparently both Grounds One and Two was an unreasonable application of Williams v. Price, 343 F.3d 223 (3d Cir. 2003); Williams v. Taylor, 529 U.S. 362, 407 (2000) and Jones v. Cooper, 311 F.3d 306, 310 (4th Cir. 2002). ECF No. 23 at 4. Petitioner does not argue the significance of these cases but merely cites to them. This is insufficient to carry his burden under AEDPA. Indeed, the court in Williams v. Taylor, did not address the issue of juror misconduct in any manner. Hence, Williams v. Taylor is of no significance to the state courts' decision with respect to this claim of alleged juror misconduct/bias.

To the extent that lower federal courts' decisions are relevant to the inquiry under 28 U.S.C. § 2254(d)(1), we find that Petitioner has failed to establish that the state courts' adjudication of this claim was an unreasonable application of Williams v. Price. The discussion in Williams v. Price, is distinguishable on its facts from this case because here the state courts found that McMillin did not lie in her questionnaire, whereas there was no such state court finding of fact in Williams v. Price. Williams v. Price, 343 F.3d at 234 ("the Commonwealth's brief argues that Hayes's evidence did not show that the juror in question lied during voir dire. Appellee's Br. at 15. We would be presented with a different question in this appeal if the state courts had made a factual finding that Hayes's testimony was not credible or that the juror in question, despite the comment recounted by Hayes, had answered the pertinent voir dire questions truthfully. In either of those circumstances, we would be compelled to decide whether the state courts' findings were 'unreasonable' in light of the state court record. 28 U.S.C. § 2254(d)(2). But the state courts made no such findings."). We have already determined that the state courts' finding that McMillin did not lie, is not an unreasonable determination of the facts in this case. Accordingly, Williams v. Price does not establish that the state courts applied

11

clearly established Supreme Court precedents unreasonably. Moreover, the state courts did not apply the "no impeachment" rule in this case as the state courts had done in the case of Williams v. Price, which was the concern in Williams v. Price.

As to Jones v. Cooper, Petitioner fails to elaborate how that case supports a contention that the state courts' decision herein unreasonably applied United States Supreme Court precedent. Nor do we find that Jones v. Cooper supports such a contention. There, as here, the United States Court of Appeals for the Fourth Circuit concluded that the Petitioner failed to establish the juror lied or was biased against the criminal defendant.

Accordingly, Ground One and Ground Two fail to afford Petitioner relief in this federal habeas proceeding.

**B. Grounds Three and Four - Alleged Errors During PCRA Proceedings.**

We will address Grounds Three and Four together as they concern alleged errors occurring during the PCRA proceedings. In Ground Three, Petitioner claims that his rights to substantive due process, i.e., fundamental fairness, and compulsory process were violated by the PCRA trial court rejecting his PCRA counsel's belated request to subpoena Amy McMillin. In Ground Four, Petitioner implicitly concedes that it was not PCRA trial court error but was in fact due to the ineffectiveness on the part of PCRA counsel for failing to subpoena Amy McMillin in a timely manner or to request such a subpoena in a timely manner, i.e., before the PCRA hearing had concluded, that caused him to not present the testimony of Amy McMillin.

The problem for Petitioner is that alleged errors in the course of the PCRA proceedings simply do not provide a basis for the grant of the federal writ of habeas corpus. "[H]abeas proceedings are not the appropriate forum for [the petitioner] to pursue claims of error at the PCRA proceeding." Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004); see also Hassine v.

Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation."). Hence, any and all of Petitioner's claims, regarding errors allegedly committed by the state courts during the PCRA proceedings, fail to afford a basis for the grant of habeas relief in these federal habeas proceedings.

### C. No Right to Evidentiary Hearing in this Court.

Lastly, in his Traverse, Petitioner argues that he is entitled to an evidentiary hearing in this Court as a matter of right, apparently to establish that his federal rights to a fair trial were violated by the presence of Amy McMillin on the jury. ECF No. 22, ¶ 6. In support thereof, Petitioner cites to Townsend v. Sain, 372 U.S. 293 (1963). Petitioner alleges that the state court fact finding was inadequate because of its refusal to grant PCRA counsel's belated request to subpoena Amy McMillin. Petitioner is simply mistaken on the law.

First and foremost, Petitioner fails to acknowledge the abundant case law which notes that Townsend's holding with respect to mandatory evidentiary hearings held in federal habeas proceedings has been superseded by AEDPA. See, e.g., Cotto v. Murray, No. CIV.A. 10-99, 2011 WL 1118724, at *6 (W.D. Pa. March 24, 2011) ("Petitioner also contends that he is entitled to an evidentiary hearing, and in support he relies upon *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). [ECF No. 16 at p. 2]. Petitioner's reliance on *Townsend* is misplaced. In it, the U.S. Supreme Court enunciated standards regarding when a district court was required to conduct a federal habeas evidentiary hearing. That decision was superseded by AEDPA, which significantly amended the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, and it applies to all habeas petitions filed after its effective date of April 24, 1996.").

In fact, post-AEDPA, because the state courts adjudicated Petitioner's two claims with respect to Amy McMillin on the merits, this Court is affirmatively prohibited from holding an evidentiary hearing on these two claims. Cullen v. Pinholster, 563 U.S. 170 (2011).

In Pinholster, the United States Supreme Court declared:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.

Id. at 181 - 182.

In light of Pinholster, this Court cannot hold an evidentiary hearing on Grounds One or Two, the only grounds that raise a claim that can provide a ground for relief in these federal habeas proceedings.

**D. Certificate of Appealability.**

Because jurists of reason would not find the foregoing denial of the habeas Petition debatable, a Certificate of Appealability is denied.

**V. CONCLUSION**

For the reasons set forth herein, the Petition is denied. A Certificate of Appealability is also denied.

BY THE COURT:

Date: March 27, 2017
s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM-ECF